# EXHIBIT 1

Steven Rinehart (USB #11494)
**STEVEN L. RINEHART, LLC**
707 West 700 South, Suite 201
Woods Cross, UT 84087
Office: (888) 941-9933
Mobile: (801) 347-5173
Fax: (801) 665-1292
Email: steve@rinehart-law.com

*Attorneys for Plaintiffs*

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH
## SALT LAKE CITY DIVISION

| | |
|---|---|
| NEIL ATKINSON, an individual; and PLR, LLC, a Utah limited liability company; | **COMPLAINT** |
| | **(JURY DEMAND)** |
| Plaintiffs, | Case No. 090919304 |
| vs. | Judge: Toomey |
| RONALD FISHER, an individual; WELLS FARGO BANK, NATIONAL ASSOCIATION, a foreign corporation; BLUE BIRD HOLDINGS, LLC, a Utah limited liability company; a ANTHONY VANG, an individual; DAVE MCBRIDE, an individual; and JOHN DOES 1 – 5; | |
| Defendants. | |

COME NOW Plaintiffs Mark Rinehart and Neil Atkinson, by and through counsel

undersigned, and complain of Defendants as follows:

## I.  PARTIES, JURISDICTION AND VENUE

1.      Plaintiff PLR, LLC ("PLR") is a Utah limited liability company organized under the laws of the State of Utah.

2.      Plaintiff NEIL ATKINSON ("Atkinson") is an individual residing in Davis County, State of Utah.

3.      Defendant RONALD FISHER ("Fisher") is an individual residing in Utah County, State of Utah, who, upon information and belief, is presently incarcerated in a federal penitentiary managed by the Federal Bureau of Prisons.

4.      Defendant WELLS FARGO BANK, NATIONAL ASSOCIATION ("Wells Fargo"), is a foreign corporation headquartered in South Dakota, and subject to general jurisdiction in the State of Utah.

5.      Upon information and belief, Defendant ANTHONY VANG ("Vang") is an individual residing in Sacramento County, State of California, and an employee of Wells Fargo.

6.      Upon information and belief, Defendant DAVID MCBRIDE ("McBride") is an individual residing in Sacramento County, State of California.

7.      Upon information and belief, JOHN DOES 1 – 5 ("Does 1 -5") are individuals or organizations who conspired with Defendants in the fraud herein alleged, but whose identities have yet to be ascertained.  It is anticipated that Does 1 – 5 will be named as defendants at a later date during, after or before discovery.

8.      This Court has jurisdiction over all Defendants.

9.      The claims alleged herein arose in Salt Lake City, and venue in this Court is

proper.

## II.          **PRELIMINARY STATEMENT**

**10.**          In the 1990s, Defendant Fisher stole tens of millions of dollars by fraudulently inducing individuals and organizations to loan him money while impersonating an airline representative. After serving thirteen years in federal prison for theft and fraud committed while pushing his confidence schemes, Defendant Fisher continued his illicit activities where he left them before his incarceration by procuring and obtaining a loan of $400,000 from Plaintiffs, purportedly to purchase an aircraft, using forged documents. Fisher worked in conjunction with co-conspirators employed at, or affiliated with, the Sacramento, California branch of Wells Fargo Bank to fraudulently induce Plaintiffs to make the loan. Plaintiffs delivered $400,000 to Fisher in accordance with the loan. The loan proceeds were stolen by Fisher, and no portion of the principal, interest, or penalties ever repaid. Plaintiffs to this action lost $400,000 in principal, and have been left financially and emotionally distressed on the brink of ruin. Defendant Fisher is now again incarcerated and awaiting federal criminal prosecution for defrauding Plaintiffs and at least seven other parties for millions of dollars while on parole.

## III.          **GENERAL ALLEGATIONS**

### *Factual Background*

**11.**          Defendant Fisher was convicted in 1994 of stealing millions of dollars from numerous individuals and organizations using fraudulent lending scams in which Fisher falsely claimed to be an airline pilot and president of an airline company with a high personal net worth. Using these misrepresentations and forged documents, Fisher applied for loans to purportedly

purchase various aircraft for sale across the United States.

 **12.**  Defendant Fisher was not a pilot, and not affiliated with any legitimate airline.

 **13.**  Fisher never purchased, nor had any intention of purchasing, any of the aircraft for which he sought loans, including the loan from Plaintiffs in this action.

 **14.**  Using forged documents, checks, credentials, references and other falsities of every kind, Fisher would secure these aircraft loans from trusting sources, then steal the loan proceeds to fund his luxurious lifestyle of crime and in furtherance of other felonies and confidence schemes.

 **15.**  Fisher was indicted, prosecuted and convicted in about 1994 of numerous counts of theft-related crimes, including grand theft, forgery, theft by trick, fraud, bank fraud, and the like.

 **16.**  Defendant Fisher is a thief, conman, and felon.

 **17.**  Upon information and belief, Fisher was sentenced to 136 months incarceration in a federal penitentiary in 1994.

 **18.**  Upon information and belief, Fisher was released from federal prison in 2006 on parole.

 **19.**  After being released on parole in 2006, Fisher began almost immediately to again defraud new individuals and organizations around the State of Utah, using the same *modus operandi* he developed in the 1990s before entering federal prison.

 **20.**  Almost immediately thereafter, Fisher established one or more LLCs in the State of Utah, including Blue Bird Holdings, LLC, which he began using to defraud individuals and

organizations around the Mountain West.

21.     In early 2009, after Fisher had defrauded approximately one organization every three to four months for almost three years, Jeremy Bach, a close friend, confidant and shill of Fisher, who oversaw his financial matters in the State of Utah, arranged for Fisher to be introduced to Plaintiff Atkinson.

22.     Believing that Fisher was seeking a loan in good-faith, Atkinson and Plaintiff PLR's agent Mark Rinehart, invited Fisher to submit loan documents evidencing his personal net worth, employment history, assets, professional experience, and information about his planned aircraft purchase so that Plaintiffs could evaluate his ability to repay the loan and other risks.

23.     In January and February 2009, Fisher submitted more than one hundred pages of documents to Plaintiffs, including his personal resume **attached hereto as Exhibit A**, in which Fisher falsely claims to be a "licensed pilot" educated at Brown Field Flight School, and a "successful aviation executive with more than 30 years of experience."

24.     Every substantive representation made by Fisher in his resume was false.

25.     Fisher also submitted balance sheets **attached hereto as Exhibit B** showing his 2007 net income to $874,245.84, which balance sheets were also forged.

26.     Fisher submitted various other forged documents, many of which are collectively **attached hereto as Exhibit C**, which purport to show that Fisher and Blue Bird Holdings, LLC own various other aircraft covered by insurance policies, along with other assets.

27.     Fisher represented to Plaintiffs that he had more than $2 million in the bank for a down-payment on the purchase of a 1975 Gulf Stream IISP (the "Aircraft"), and that he was

$400,000 short on the down-payment he needed for the purchase of the aircraft.

28.     Fisher claimed to have the ability to repay Plaintiffs $400,000 plus interest (hereinafter the "Funds") over a short period of time if Plaintiffs would make him a hard money loan for the additional $400,000 he needed as a down-payment to purchase the plan.

29.     Plaintiffs informed Fisher they would need to verify that he had the remaining balance of the down-payment for the aircraft in the bank, and verify that he was only deficient the $400,000 for which he was seeking a loan from Plaintiffs.

30.     Fisher represented to Plaintiffs that he had the remaining balance of the down-payment in his savings account with Wells Fargo Bank in Sacramento, California.

31.     Plaintiff Atkinson called Wells Fargo Bank in California.   In a recorded conversation, a teller named Anthony Vang confirmed that Fisher had the down-payment in his account which was needed for the aircraft purchase.

32.     In a subsequent recorded conversation, a manager at the branch informed Plaintiff Atkinson that Anthony Vang was a "personal banker" at the branch.

33.     Defendant Anthony Vang was working with an individual alleged named Dave McBride.

34.     Vang later faxed Plaintiffs a forged "verification of funds" showing Fisher had a balance of more than $2,400,000.

35.     Upon information and belief, Fisher had only $1,000 in this account at the time funds were verified.

36.     Upon information and belief, Fished paid Vang and McBride $7,500 cash to do a

false verification of funds in furtherance of Fisher's fraud.

37.     Wells Fargo employees, including Vang and possibly the branch manager, assisted Fisher with his fraud, and acted as co-conspirators in Fisher's fraud in exchange for $7,500.

38.     Acting in reliance upon the representations of Fisher and Wells Fargo, Plaintiffs loaned Fisher the Funds of $400,000.

39.     Fisher never purchased the aircraft, and promptly stole the $400,000 loaned to him to fund his opulent life of crime and to pay co-conspirators in the fraud perpetrated upon Plaintiffs and others.

40.     Fisher has never repaid any portion of the Funds to Plaintiffs.

41.     In the summer of 2009, Fisher was arrested by the FBI for numerous counts of fraud.

42.     Fisher is currently incarcerated on parole violations, and awaiting new charges of theft and fraud, in the custody of the Federal Bureau of Prisons.

### FIRST CAUSE OF ACTION
### RESPONDEAT SUPERIOR
### (Asserted Against Wells Fargo)

43.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

44.     At all times relevant, Vang and the branch manager recorded by Plaintiffs were employees of Wells Fargo, and were agents of Wells Fargo with actual and apparent authority to verify funds.

45.     All of the communications between Plaintiffs and Vang and Vang's branch

manager were within the scope of Vang's and Vang's branch manager's employment with Wells Fargo.

46.     In February of 2009, Plaintiffs were the victims of tortious conduct perpetrated by Vang.

47.     Plaintiffs contacted Vang and Vang's branch manager because they were employees of Wells Fargo with apparent and actual to verify funds.

48.     Under the doctrine of *respondeat superior*, or the Master-Servant Rule, Wells Fargo is vicariously liable for the actions of Vang in this matter.

49.     Under the doctrine of *respondeat superior*, or the Master-Servant Rule, Wells Fargo is vicariously liable for the actions of Vang's branch manager in this matter.

50.     Under the doctrine of *respondeat superior*, or the Master-Servant Rule, Wells Fargo vicariously liable for the actions of McBride in this matter.

51.     Wells Fargo is vicariously liable for the actions of Fisher in this matter, as Wells Fargo Employees knowingly conspired with Fisher to defraud Plaintiffs.

52.     Vang and/or McBride and/or possibly Vang's branch manager acted with the intention that they would benefit from Fisher's fraud in the form of $7,500 cash from Fisher.

53.     As a result of the tortious conduct perpetuated by Wells Fargo employees and agents, Plaintiffs have suffered damages as described herein below.

54.     The tortuous and criminal conduct committed by Wells Fargo employees was egregious and oppressive and characterized by malice and wantonness, justifying the imposition of punitive damages.

## SECOND CAUSE OF ACTION
### FRAUDULENT MISREPRESENTATION
#### (Asserted Against All Defendants)

55.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

56.     Fisher represented to Plaintiffs that he was interested in contracting with them for a hard money loan of $400,000 (the "Funds") needed by him and Blue Bird Holdings, LLC to purchase an aircraft, and that in exchange he would repay the Funds plus interest.

57.     Fisher never had any intention of repaying the Funds or of purchasing the Aircraft.

58.     Fisher and Defendants made material misrepresentations to Plaintiffs regarding Fisher's professional background, his net worth, his education, his assets, and his intentions in forged written materials which he used to solicit the Funds from Plaintiffs.

59.     Fisher and Defendants intentionally disregarded the truth of his representations to Plaintiffs for purpose of inducing Plaintiffs to act as they would not have otherwise done and loan Fisher money.

60.     Plaintiffs did, in fact, act upon Fisher and Defendants' false representations and expended substantial cash assets in reliance on Braden's representations.

61.     Fisher materially misrepresented to Plaintiffs the intended use of the $400,000 cash paid to him by Plaintiffs, representing that the money would by used to purchase an aircraft when, in fact, Fisher only intended to enrich himself at Plaintiffs' expense.

62.     Fisher's intended use of the consideration from Plaintiffs was a presently existing material fact at the time Plaintiffs and Fisher were negotiating which Fisher, Vang,

McBride and Vang's branch manager knew to be false or made recklessly, knowing he had insufficient knowledge upon which to base such a representation.

63.     Plaintiffs have suffered a loss as a result of their reliance on Fisher's misrepresentations of at least $400,000.

64.     Defendants have, by engaging in the conduct set forth above, knowingly and recklessly made numerous material representations concerning his intentions, the nature and profitability of the Business, and other presently existing material facts, which were false, for the purpose of inducing the Plaintiffs to act by transferring funds and services to Braden.

65.     Plaintiffs, acting reasonably and in ignorance of the falsity of Braden's representations, did in fact rely upon the representations and were thereby induced to part with a substantial sum of money and work services to their injury and have been extensively damaged thereby in an amount to be proved at trial.

### THIRD CAUSE OF ACTION
### COMMON LAW FRAUD
#### (Asserted Against All Defendants)

66.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

67.     Defendants made oral promises and executed documentation with Plaintiffs for the purpose of forming a contract, which did in fact form a contract, in which Fisher and Blue Bird Holdings made promises to Plaintiffs which Defendants had no intention of honoring, or which Defendants made with reckless disregard for their truth or falsity of the promises.

68.     Defendants caused Plaintiffs to invest funds in Defendants' artifice of fraud in reliance on his misrepresentations and Plaintiffs were thereby injured.

69.     Fisher, McBride and Vang personally benefited from the fraud he perpetrated in the form of form of cash paid directly to Fisher by Plaintiffs.

## FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT
### (Asserted Against Fisher and Blue Bird Holdings)

70.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

71.     Fisher contacted Plaintiffs for the purpose of contracting for services and inducing Plaintiffs to loan Fisher money.

72.     Plaintiffs accepted Defendant's offer to contract for services and to loan Fisher money, and did in fact pay good and valuable consideration to Fisher in accordance with the contract created and **attached hereto as Exhibit D** (the "Contract").

73.     Fisher breached the Contract by stealing the principal and failing to return any of it to Plaintiffs as required of him by the Contract.

74.     Fisher has refused to honor the Contract.

75.     Fisher has wholly abandoned his fiduciary duties to Plaintiffs.

76.     Plaintiffs have suffered damages as a result of Defendants' breach of contract in an amount to be proven at trial, but not less than $493,000 including principal and interest.

## FIFTH CAUSE OF ACTION
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Asserted Against Fisher and Blue Bird Holdings)

77.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

78.     Fisher specifically breached the covenant of good faith or fair dealing, which inheres in every contract in the State of Utah, with respect to his negotiating an agreement for a

loan from Plaintiffs, and exploited Plaintiffs' trust for the improper purpose of defrauding

Plaintiffs and unjustly enriching himself.

79.     Fisher acted in bad faith, and intentionally or purposely acted to destroy or injure

the Plaintiffs' rights to receive the fruits of their contracts and to deprive them of the fruits of

their bargain.

80.     Defendants are therefore liable to Plaintiffs in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Asserted Against Fisher and Blue Bird Holdings)

81.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

82.     Plaintiffs conferred a benefit upon Defendants in form of $400,000 cash.

83.     Fisher appreciated and had knowledge that Plaintiffs had conferred upon him

these benefits, as he contemplated in written documents he signed.

84.     Under the circumstances established herein, it would be inequitable to allow

Defendants to retain the benefits Plaintiffs have conferred upon him without payment to

Plaintiffs of the value of said benefits.

85.     Defendants have been unjustly enriched.

86.     Plaintiffs are entitled to judgment for unjust enrichment in an amount to be

determined in trial.

### SEVENTH CAUSE OF ACTION
### CONVERSION
### (Asserted Against All Defendants)

87.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

88.     Fisher has unlawfully converted Business funds for his own benefit.

89.     Upon information and belief, Fisher has knowingly misappropriated more than $400,000 of Plaintiffs money for his own benefit which rightfully belonged personally to Plaintiffs, and in spite of an express promise to pay such funds to Plaintiffs.

90.     Fisher is in violation of Utah Code § 76-6-405, Theft by Deception.

91.     Fisher has taken these funds in the form of direct withdraws at ATM and branches of local banks and through checks drawn on local banks.

92.     Fisher has intentionally converted these funds in a manner inconsistent with his rights to the funds and the contracts between Plaintiffs and Defendants.

93.     Plaintiffs have suffered damages in an amount to be proven at trial.

### EIGTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (Asserted Against Fisher and Blue Bird Holdings)

94.     Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

95.     A fiduciary relationship existed between Plaintiffs and Fisher because Fisher controlled the Funds given to him by Plaintiffs, which Funds he was only authorized to use for a specific purpose: the purchase of an aircraft.

96.     A fiduciary relationship existed between Plaintiffs and Fisher because Fisher created such a relationship by contract in the loan documents (Exhibit D) in which Fisher agreed:

(a) to use the Funds to Purchase a particular aircraft; and

(b) to repay the Funds.

97.     This fiduciary relationship gave rise to fiduciary duties on the part of Fisher,

including duties of opportunity, communication, diligence and loyalty.

98.     Fisher breached these fiduciary duties by refusing to repay any of the Funds, principal or penalties, and by misappropriating the Funds for Fisher's own personal benefit and in violation of Utah criminal statutes.

99.     Plaintiffs have been damages by Braden's breaches of fiduciary duties in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
### CIVIL CONSPIRACY
**(Asserted Against Vang, Wells Fargo and McBride)**

100.    Plaintiffs incorporate all of the foregoing paragraphs as if fully set forth herein.

101.    Vang, McBride, and Vang's branch manager colluded with Fisher to work together to defraud Plaintiffs in violation of Utah and federal statutory and common law.

102.    Vang acted in furtherance of the conspiracy by taking the overt step of falsely verifying that funds in a Wells Fargo account existed which did not, knowing his misrepresentation was being used in furtherance of the fraud Fisher was perpetrating on Plaintiffs.

103.    Vang's branch manager took the overt step of verifying that Vang was an employee with the Sacramento, California Wells Fargo Branch in furtherance of the fraud.

104.    Wells Fargo is vicariously liable for the conspiratorial actions of Vang, McBride and Vang's branch manager in this case.

105.    Plaintiffs have been damages by Braden's breaches of fiduciary duties in an amount to be proven at trial.

## IV.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for Judgment against the Defendants as follows:

1. For all general damages associated with the causes of action asserted above in an amount to be proven at trial.

2. For all compensatory damages associated with the causes of action asserted above in an amount to be proven at trial, but not less than $400,000.

3. For all special damages associated with the causes of action asserted above in an amount to be proven at trial.

4. For all punitive and exemplary damages associated with the causes of action asserted above in an amount to be proven at trial.

5. For attorney fees Plaintiffs have incurred in pursuing this action.

6. For these causes of action be set before a jury.

7. For such other relief as deemed appropriate by the trier of fact.


DATED and SIGNED this _4_ day of November, 2009.


STEVEN L. RINEHART
*Attorney for Plaintiffs*

Plaintiffs' Address:

707 West 700 South, Suite 201
Woods Cross, UT 84087